UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| TODD SKOKAN, individually, and as Special Administrator of the Estate of NATHANIEL P. SKOKAN, deceased, and LISA SKOKAN, SAMUEL SKOKAN and ZACHARY SKOKAN,<br><br>     Plaintiffs,<br><br>vs.<br><br>ROYAL CARIBBEAN CRUISES LTD.,<br><br>     Defendant. | CASE NO.: 1:17-CV-24337-CMA |

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTIONS IN LIMINE
## (NON-DAUBERT)

Plaintiffs, Todd Skokan, individually, and as Special Administrator of the Estate of Nathaniel P. Skokan, Deceased, and Lisa Skokan ("Plaintiffs"), by and through the undersigned counsel, respectfully moves the Court in limine to prohibit the introduction of evidence related to, or commentary on, the matters set forth herein.

### I. INTRODUCTION

Plaintiffs, Todd Skokan, individually, and as Special Administrator of the Estate of Nathaniel P. Skokan, Deceased, and Lisa Skokan ("Plaintiffs" or "Skokans"), by and through the undersigned counsel, submit this Brief in support of their Motion in Limine (non-Daubert). The Plaintiffs respectfully ask the Court to enter an Order in limine preventing Defendant from offering evidence, argument, or commentary at trial regarding the following Motion in Limine Topics:

### MOTION IN LIMINE TOPICS

1. Any reference to Nathan Skokan taking anti-depressant medication or a medication known as Pristiq;

2. Any evidence of, comments or arguments with respect to Nathan's prior medical history, records and/or diagnoses, including prior psychiatric or mental health history;

3. Any evidence or commentary concerning the alleged prior marijuana use of Nathan;

4. Alcohol abuse of Nathan without proper foundation and/or appropriate expert or treating physician testimony;

5. Prohibiting the introduction of evidence or testimony through Defendant's hired experts that is not supported by proper foundation;

6. The Skokans' purchase of the all-inclusive alcoholic beverage package;

7. Ad Hominem attacks regarding the Skokans' motivations for bringing the lawsuit;

8. Any use of the words, "lottery," "jackpot," or similar words;

9. Any evidence, testimony, statement, or insinuation that we live in a "sue happy society," "a litigious society," or any other statements to that effect;

10. Any evidence, testimony, statement, or insinuation that there are too many lawsuits or too many frivolous lawsuits filed;

11. Any evidence, testimony, or statements concerning the date the Skokans hired their counsel, questions concerning the circumstances surrounding the hiring of their counsel, and/or instructions, suggestions or recommendations which they received from their counsel;

12. Ad Hominem attacks regarding the Skokans' counsel;

13. Any statement concerning the "trial strategy" or the "real strategy" of the Skokans or their attorneys or other similar inquiry;

14. Any reference or statement concerning what type of law counsel practices, including what type of clients or specific clients that counsel has represented;

15. Any testimony concerning the relative wealth of the Plaintiffs;

16. Offering any exhibits or evidence not produced in discovery, including but not limited to, individuals that were unavailable for depositions;

17. Prohibiting Defendant from calling as a witness in the trial any individual whose name was not timely disclosed to Plaintiffs;

18. Evidence regarding the probable testimony of a witness who is absent, unavailable or not called to testify in this cause;

19. Affirmative defense exclusion/default judgment;

20. Adverse inference for documents destroyed by Defendant; and

21. The fact that the Plaintiffs have filed a Motion in Limine to exclude the foregoing matters from evidence at trial.

## II. ARGUMENT

### A. Relevancy and Improper Character Evidence

Topics 1 through 15 and 21 of Plaintiff's Motion in Limine relate to matters for which are either not relevant to the issues to be tried or delving into these matters would violate Fed. R. Evid. 403 and Fed. R. Evid. 404. Because these topics are not pertinent to the trial, they should be excluded and the Skokans' Motion in Limine should be sustained.

"Irrelevant evidence is not admissible." Fed. R. Evid. 402. Evidence is relevant "if (a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

Even if the evidence is found to be relevant, Rule 403 provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403. Rule 403 "call[s] for balancing the probative value of and need for the evidence against the harm likely to result from its admission." Fed. R. Evid. 403, advisory committee notes (1972). A trial court has broad discretion in determining the admissibility of evidence. United States v. Ruiz, 253 F.3d 634, 639 (11th Cir. 2001). Evidence may be excluded under Rule 403 for any one of the factors listed in the rule.

Evidence is "unfairly prejudicial" if it "lure[s] the fact finder into declaring guilt on a ground different from proof specific to the offense charged." United States v. Aguinaga, 643 F. App'x 858, 862 (11th Cir. 2016) (quoting Old Chief v. United States, 519 U.S. 172, 180, 117 S. Ct. 644, 650, 136 L. Ed. 2d 574 (1997)). Stated another way, Rule 403 serves to exclude evidence "dragged in by the heels for the sake of its prejudicial effect." United States v. Veltmann, 6 F.3d 1483, 1500 (11th Cir. 1993) (internal citations omitted).

Finally, Fed. R. Evid. 404 sets forth that "evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with

the character or trait." Additionally, "circumstantial use of character evidence raises questions of relevancy as well as questions of allowable methods of proof." Notes of Advisory Committee on Rules, Fed. R. Evid. 404. There are no exceptions applicable since this is a civil case. Moreover, the exceptions in Rules 607, 608 and 609 are inapplicable.

### 1. Topic No. 1 – Any Reference to Nathan Skokan Taking Anti-Depressant Medication or a Medication Known as Pristiq

In August of 2016, Nathan was suffering from some situational anxiety and signs of depression. Nathan's grandmother died, as well as an aunt that was close to Nathan Skokan.

A student at the University of Nebraska, Nathan ultimately took the fall 2016, semester off at the University of Nebraska with plans to return for the Spring semester in January of 2017. In the summer and fall of 2016, Nathan had four (4) visits with a psychotherapist in Lincoln, Nebraska and three (3) visits with a psychiatrist in Omaha, Nebraska.

On December 1, 2016, Nathan had an appointment with Dr. Sarah Jones, a psychiatrist in Omaha, Nebraska. Dr. Jones gave Nathan a "sample pack" of an anti-anxiety medication known as Pristiq. (Deposition of Sarah Jones, 76:20-77:5) This medication treats depression and anxiety and is similar to other anti-anxiety medications such as Prozac and Lexapro.

On December 16, 2016, Nathan had an appointment with Dr. Amy Chatelain, a psychologist in Lincoln, Nebraska. Dr. Chatelain knew that Nathan had been provided with a sample pack of Pristiq. (Deposition of Amy Chatelain, 61:22-24) At this appointment Dr. Chatelain and Nathan discussed the fact that he was going to go on the Royal Caribbean cruise with his family for purposes of getting away. Id. at 82:4-6.

Pristiq is a medication that needs to be taken for a number of weeks before it provides any therapeutic effect. It is anticipated that Defendant will attempt to introduce evidence regarding Royal Caribbean security personnel finding the sample pack of Pristiq in luggage alleged to belong to Nathan. It is also anticipated that Royal Caribbean will attempt to introduce evidence regarding the impact or contraindications that Pristiq and/or other anti-depressive medication may have on the human body when combined with alcoholic beverages.

During its investigation of the overboard incident as it relates to Nathan, the Broward County Sheriffs' Department discovered that Nathan's luggage was missing. (Deposition of John Golden, 80:8-18, 81:2-9, and 82:2-6) A Royal Caribbean employee retrieved luggage presumed

to be Nathan's from the luggage terminal located in Port Everglades. Id. Upon opening the unlocked luggage, the Pristiq sample pack was found. Id. at 81:2-9, and 82:2-6.

There is no testimony in the record that Nathan ever actually used any of the Pristiq sample pack at any point. In fact, there is zero testimony in the record that Nathan took any Pristiq, or any other anti-depressive medication for that matter, at any time during the cruise, including the date that Nathan lost his life.

Although Royal Caribbean has collected medical records, doctors records, physicians notes and prescription records, there is zero evidence in the record that Nathan had obtained, or filled, a prescription of any anti-depressive medication, including but not limited to, Pristiq prior to the cruise.  Likewise, there is no evidence that Nathan had taken any of the Pristiq.  It is unknown as to whether the sample pack was even opened.

Accordingly, any reference to or testimony concerning the presence of the sample pack of Pristiq, or evidence that Nathan had taken Pristiq, was under the influence of Pristiq, or that Pristiq should not be taken one is drinking alcoholic beverages, would be highly prejudicial, speculative, and likely to mislead the jury. Broberg v. Carnival Corp., No. 17-CV-21537, 2018 U.S. Dist. LEXIS 98479, at *13-14 (S.D. Fla. June 11, 2018) (excluding defendant's introduction of evidence of prescription drugs when there was no evidence the plaintiff consumed any prescription drugs, let alone that she consumed them within a relevant time period before the accident); and see, e.g. Douglas v. Zachry Industrial, Inc., 2015 WL 12838969 at *3 (M.D. Fla 2015) ("The court finds that evidence and argument regarding plaintiff's addiction or misuses of pain medications is improper character evidence prohibited by Rule 404.")

As there is absolutely no evidence to support that Nathan had ingested the medication, any testimony regarding the finding of the sample pack, or the impact that Pristiq may have on someone is wholly irrelevant, would confuse the issues in the case, would have a tendency to mislead the jury, and would otherwise be unfairly prejudicial to Plaintiffs.

Accordingly, Plaintiffs pray for an Order that any reference to the medication Pristiq, or any other anti-depressive medication that may have been consumed by Nathan, or somehow exacerbated and/or caused the circumstances leading up to Nathan's accidental and tragic death should be excluded.

> **2.    Topic No. 2 – Any evidence of, comments or arguments with respect to Nathan's prior medical history, records and/or diagnoses, including prior psychiatric or mental health history.**

It is anticipated that Royal Caribbean may attempt to introduce evidence regarding Nathan's medical history, records, and/or diagnosis. In particular, it is anticipated that Defendant may attempt to introduce evidence of Nathan's prior psychiatric or mental health history in an effort to portray Nathan's state of mind on December 22, 2016.

It is expected that Royal Caribbean will attempt to allege that Nathan intentionally jumped from the vessel, had intentionally taken his own life, and that his actions were suicidal. First, the official 30(b)(6) witness of Defendant Royal Caribbean, Amanda Campos, tacitly admitted in her deposition that Royal Caribbean had absolutely no knowledge of Nathan's state of mind at the time he went over the railing. (Deposition of Amanda Campos, 117:4-21) Likewise, each and every one of the three (3) eyewitnesses (within feet of Nathan) to the incident categorically refute any suggestion that Nathan intentionally went overboard or was suicidal at the time of his death.

As stated previously, Nathan had some situational anxiety and depression at different points in 2015 and in the summer and fall of 2016. However, all of the medical professionals who were deposed in this case by Royal Caribbean state at the time of their respective visits that Nathan was expressing no suicidal ideation or thoughts of harming himself or others (Jones Depo., 69:5-9 ; Chatelain Depo., 93:13-18; and Deposition of Zakaria Siddiqui, 59:7-10, and 60:4-8).

Royal Caribbean is trying to take Nathan's prior medical history completely out of context. For example, what if the issue in this lawsuit was whether a defendant was speeding at the time of a motor vehicle collision on an interstate highway that runs into the city of Miami. It certainly would not be relevant to whether the defendant was speeding at the time of the accident if the very same defendant had half a dozen speeding tickets, on the very same interstate highway. This case is no different.

Evidence of Nathan's prior diagnoses, consultations with physicians, or other aspects of his medical records is inadmissible because its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Fed. R. Evid. 403. Pursuant to Rule 403, the balance between the probative value of evidence and the prejudice it may cause will depend upon the purpose for which the evidence is to be admitted. U.S. v. Skillman, 922 F.2d 1370 (9th Cir. 1990). Once the purpose is known, the Court must determine whether relevant evidence creates a danger of unfair prejudice before determining whether the danger of unfair prejudice substantially outweighs the probative value of the evidence. U.S. v. Irvin, 787 F.2d 1506 (11th Cir. 1986).

There is no evidence to support Royal Caribbean's suggestion that Nathan was suffering from a mental illness on December 21-22, 2016 that was a proximate cause of his accidental death. The only conceivable use of these medical records is to diminish Nathan's character and health in the eyes of the jury. Such an improper purpose makes it probable, if not likely, that Nathan's next-of-kin will be unfairly prejudiced by such medical record evidence and that the jury will be misled to believe that Nathan acted in conformity with some unproven mental illness that was a proximate cause of his death. The prejudicial effect of this evidence will substantially outweigh its limited probative value. Thus, any and all medical record evidence or commentary should be excluded at trial.

Likewise, the introduction of any previous medical evidence or medical testimony to suggest that Nathan committed suicide at the time he went over the railing would be highly prejudicial, confusing and misleading. In Doe, the Court specifically held that introduction of evidence regarding a Plaintiff's prior suicide attempts, associated hospitalization and treatment was unfairly prejudicial, confused the issues, and may mislead the jury. Doe v. NCL (Bahamas) LTD, No. 11-22230-Civ, 2012 U.S. Dist. LEXIS 167963, at *11-12 (S.D. Fla. Nov. 27, 2012); *see also* Dodd v. Workman, CIV-06-140-D, 2011 U.S. Dist. LEXIS 85604, 2011 WL 3299101, at *25 (W.D. Ok. Aug. 2, 2011) (finding that the existence of traumatic events in the litigant's remote past that might have prompted him to make suicidal gestures does not establish that litigant is constantly suicidal, easily rendered suicidal, or otherwise mentally ill). Unlike the plaintiff in Doe, here the court is not confronted with evidence of prior suicide attempts, rather there is only evidence demonstrating that Nathan received psychiatric and mental health care. As such, any reference to his psychiatric or mental health history would be highly prejudicial, confusing and misleading.

Indeed, all of the medical professionals deposed by Royal Caribbean, to-wit: Dr. Chatelain, Dr. Siddiqui and Dr. Jones all testified that at the time of their last visit with Nathan,

he expressed no ideas towards taking his own life, harming himself or others. Likewise, the extensive record developed by Royal Caribbean revealed no evidence that Nathan ever attempted to take his own life at any time.

The introduction of Nathan's medical records in an attempt to allege some type of conforming behavior is also impermissible character evidence. *See*, *e.g.*, Dewit v. UPS Ground Freight, Inc., No. 1:16-CV-36-MW/CAS, 2017 U.S. Dist. LEXIS 213728, at *15 (N.D. Fla. Aug. 22, 2017) (holding that testimony regarding an individual's honorable discharge from the military was irrelevant and improper character evidence in a negligence action), Smith v. Hooligan's Pub & Oyster Bar, Ltd., 753 So. 2d 596, 599 (Fla. Dist. Ct. App. 2000) (applying Fed. R. Evid. 404 to preclude evidence of a violent past and additionally noting that the probative value of such evidence is outweighed by its prejudicial effect), and United States v. Utter, 97 F.3d 509, 514 (11th Cir. 1996) (finding that testimony of the statement "burn her out" was inadmissible propensity evidence when it was sought to be used to allege the Defendant committed arson).

Royal Caribbean is expected to argue that Nathan's prior mental health treatments evidence some type of depressed state of mind and propensity to commit suicide on the night of the accident. However, such a contention improperly seeks to cherry pick facts about Nathan's anecdotal and historic medical treatment/disposition to suggest that Nathan was acting in conformity with that disposition on the tragic night he lost his life on the vessel. Fed. R. Evid. 404 mandates such evidence be excluded.

For the foregoing reasons, any evidence of, or comments with respect to, Nathan's medical history, records and/or diagnoses, including prior psychiatric or mental health history utilized to support an argument by Royal Caribbean as to Nathan's state of mind on December 22, 2016, would risk confusing the issues, mislead the jury, and constitute improper character evidence and thus should be excluded. Accordingly, the Court should sustain the Plaintiffs' Motion in Limine as to this topic.

> **3.     Topic No. 3 – Any evidence or commentary concerning the alleged prior marijuana use of Nathan.**

Plaintiffs anticipate that Royal Caribbean will attempt to introduce evidence or commentary alleging that Nathan had used marijuana at sporadic times in his past. However, there is absolutely no evidence whatsoever to support any argument or suggestion that Nathan

had used marijuana at any time during the cruise. The introduction of such evidence is entirely irrelevant, would be highly prejudicial, confusing and misleading to the jury, and would be improper character evidence. Broberg v. Carnival Corp., No. 17-CV-21537, 2018 U.S. Dist. LEXIS 98479, at *13-14 (S.D. Fla. June 11, 2018) (excluding defendant's introduction of evidence of prescription drugs when there was no evidence the plaintiff consumed any prescription drugs, let alone that she consumed them within a relevant time period before the accident); and se*e, e.g.* Douglas v. Zachry Industrial, Inc., 2015 WL 12838969 at *3 (M.D. Fla 2015) ("The court finds that evidence and argument regarding plaintiff's addiction or misuses of pain medications is improper character evidence prohibited by Rule 404.")

As there is absolutely no evidence to support that Nathan had used any marijuana while on the cruise, any testimony regarding his alleged use of marijuana in the past is wholly irrelevant, would confuse the issues in the case, would have a tendency to mislead the jury, and would otherwise be unfairly prejudicial to Plaintiffs.

Wherefore, Plaintiffs pray that the Court should exclude this evidence or attempts to make such argument pursuant to Rules 402, 403, or 404, and sustain Plaintiffs' Motion in Limine as to this topic..

### 4. Topic No. 4 – Alcohol abuse of Nathan without proper foundation and/or appropriate expert or treating physician testimony.

Defendant is expected to allege that Nathan had a history of alcohol abuse, and that such contributed to his wrongful death. This testimony or evidence would be impermissible character evidence and would be unfairly prejudicial, confuse the issues, and may mislead the jury.

Any suggestion that Nathan had a history of alcohol abuse is highly speculative, unfairly prejudicial, will confuse the issues, and may mislead the jury. Allegations that Nathan had a history of alcohol abuse in an attempt to allege some type of conforming behavior would be unfairly prejudicial, confuse the issues, and will mislead the jury. Smith v. Hooligan's Pub & Oyster Bar, Ltd., 753 So. 2d 596, 599 (Fla. Dist. Ct. App. 2000) (precluded evidence of a violent past and as the probative value of such evidence is outweighed by its prejudicial effect).

In the months prior to the cruise, Nathan had sought medical care from Sarah Jones, M.D. In her deposition, Dr. Jones, specifically stated that she "didn't talk to [Nathan] about substance abuse." (Jones Depo., 53:7-10). There is no other evidence to support that in the time leading up to the cruise, Nathan had suffered from alcohol abuse and reference to the same would be highly

speculative, unfairly prejudicial, confuse the issues, and may mislead the jury. While there is anecdotal evidence in medical histories or medical questionnaires about the periodic consumption of alcoholic beverages, Nathan was never treated and/or sought treatment for any type of issues involving alcohol.

Furthermore, any inference of Nathan's previous occasional alcohol use would constitute inadmissible character evidence. Federal Rule of Evidence 404(a) sets forth that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Dewit v. UPS Ground Freight, Inc., No. 1:16-CV-36-MW/CAS, 2017 U.S. Dist. LEXIS 213728, at *15 (N.D. Fla. Aug. 22, 2017) (holding that testimony regarding an individual's honorable discharge from the military was irrelevant and improper character evidence in a negligence action), United States v. Utter, 97 F.3d 509, 514 (11th Cir. 1996) (finding that testimony of the statement "burn her out" was inadmissible propensity evidence when it was sought to be used to allege the Defendant committed arson); *see also* Alexander v. Cit Tech. Fin. Servs., 217 F. Supp. 2d 867, 882 (N.D. Ill. 2002) (citing United States v. Cameron, 814 F.2d 403, 405 (7th Cir. 1987) (excluding any evidence, testimony, or argument regarding alleged use of alcohol or narcotics because it was not probative of the plaintiff's claims and evidence of drug use posed considerable danger to prejudicing the jury).

In this case, Nathan's prior alcohol use is flatly inadmissible as character evidence to show that Nathan was predisposed to excessive alcohol consumption, or that he acted in conformity with prior behavior when he fell from the vessel on December 22, 2016. There is no question that the nature and extent and the number of drinks that Royal Caribbean continued to serve Nathan on the tragic night he lost his life will be an issue and presented to the jury. However, any commentary or testimony concerning alleged prior alcohol use by Nathan is not relevant and should not be admitted at trial, as it would be unfairly prejudicial, will confuse the issues, and may mislead the jury.

At the time of his death, Nathan was a third year student at the University of Nebraska and a member of a fraternity. Anecdotal evidence of "fraternity" parties or occasional alcohol use while a student at the University of Nebraska is not admissible to prove what happened on the evening of December 21, 2016 and the early morning hours of December 22, 2016.

Wherefore, Plaintiffs pray that the Court should exclude this evidence or attempts to make such argument pursuant to Rules 402, 403, or 404, and sustain Plaintiffs' Motion in Limine as to this topic.

### 5. Topic No. 5 – Prohibiting the introduction of evidence or testimony through Defendant's hired experts that is not supported by proper foundation.

It is anticipated that Royal Caribbean will utilize its retained witnesses, William R. Sawyer, Ph.D (accident reconstructionist) and Elizabeth Trendowski (alcoholic beverage specialist), in order to introduce evidence and testimony regarding Nathan's medical history, records and/or diagnoses, including prior psychiatric or mental health history. However, neither of these hired witnesses are psychologist or psychiatrists, nor do they have the necessary medical experience or training to testify as to such issues. It is assumed that Royal Caribbean will merely utilize the expertise of these two hired witnesses in other unrelated fields as a way in which to submit unqualified opinions regarding Nathan's medical history. Any such attempt violates Fed. R. Evid. 403 as it would be unfairly prejudicial, will confuse the issues, and may mislead the jury. Bowe v. Pub. Storage, No. 1:14-cv-21559-UU, 2015 U.S. Dist. LEXIS 178180, at *13 (S.D. Fla. June 2, 2015) (motion in limine granted to preclude from expert's analysis and testimony any evidence that was not grounded in actual facts or based on any specific methodology); and King v. Cessna Aircraft Co., No. 03-20482-CIV, 2010 U.S. Dist. LEXIS 50728, 2010 WL 1980861, at *5 (S.D. Fla. May 18, 2010) ("We thus cannot cast a blind eye to such rank speculation being presented to our jury under the guise of reliable expert testimony.")

Therefore any attempt to introduce opinions or testimony through Royal Caribbean's hired experts William R. Sawyer, Ph.D and Elizabeth Trendowski that are not grounded in actual facts known personally to that hired expert or based on specific methodology, education or training within Sawyer and Trendowski's expertise should be excluded under Fed. R. Evid. 403, and an Order in limine granted.

### 6. Topic No. 6 – The Skokans' Purchase of the All-Inclusive Alcoholic Beverage Package.

At trial, Royal Caribbean will attempt to criticize or insinuate negatively that the Skokan family acted improperly by purchasing an all-inclusive alcoholic beverage package for members of their family, including Nathan, while onboard the cruise. However, such argument, criticisms,

or insinuations should be excluded from trial because they are not relevant to the issues in the case and would be unduly prejudicial to the Skokans.

The gravamen of one of Plaintiffs' causes of action involves whether Nathan had been overserved alcohol while a passenger on Royal Caribbean's vessel. Any criticism or negative insinuation regarding the Skokans' purchase of the all-inclusive alcoholic beverage package offered and aggressively advertised by Royal Caribbean would not be relevant and would be unduly prejudicial to the Skokans under Rules 402 and 403. Allowing Royal Caribbean to make such negative assertions would mislead the jury and confuse the issues in this case. Accordingly, the Court should grant the Skokans' Motion in Limine as to any arguments that Nathan's parents were somehow culpable or responsible for Nathan's death since they purchased the all-inclusive alcoholic drinking package offered by Royal Caribbean for their adult children on the cruise.

As stated previously, Dr. Jones gave a "sample" of an anti-anxiety medication known as Pristiq to Nathan on December 1, 2016. (Jones Depo., 76:20-77:5)  The record is completely devoid of a single piece of evidence that Nathan ever actually took any of the Pristiq medication or any other anti-depressive medication for that matter.  In nearly all of the questions asked of medical professionals, as well as opinions to be expressed by Royal Caribbean experts, all are extremely critical that Nathan was allowed to drink alcohol if he was taking an anti-anxiety medication, such as Pristiq, at the time of his tragic death. (Jones Depo., 48:5-10, 71:5-22, and Chatelain Depo. 42:20-23, 43:2-12)

Unfortunately for Royal Caribbean, there is no prescription for Pristiq, there is no evidence that Nathan ever took Pristiq, there is sadly no body upon which forensic toxicology was obtained, and simply no evidence whatsoever that the potential ingestion of Pristiq, or any other medication for that matter, had anything to do with this sad and tragic death of a 22-year-old man.

Wherefore, such evidence should be excluded and an Order in limine granted.

### 7.     Topic Nos. 8-11 – Ad Hominem attacks regarding the Skokans' motivations for bringing the lawsuit.

The Skokans ask the Court to prevent Defendant from asserting or otherwise insinuating that the Skokans have brought this lawsuit for any other reason than to redress the damages done to their family by the conduct of Defendant, or that there are in general too many lawsuits or frivolous lawsuits filed. Any such statement by Defendant would be completely irrelevant and

unduly prejudicial to the Skokans. *See* Energy Smart Indus., LLC v. Morning View Hotels-Beverly Hills, LLC, No. 14-cv-23284-UU, 2015 U.S. Dist. LEXIS 89346, at *2 (S.D. Fla. June 3, 2015) (evidence of prior lawsuits is irrelevant). Accordingly, the Court should sustain Plaintiffs' Motion in Limine as to these topics.

### 8. Topic Nos. 12-14 – Ad Hominem attacks regarding the Skokans' Counsel.

The Skokans request the Court prevent Defendant from discussing the circumstances related to the Skokans retaining counsel, statements concerning the "trial strategy" or "real strategy" of the Skokans or their attorneys, and discussion of the type of law or other clients represented by the Skokans' counsel, and the fact that the Skokans have filed a Motion in Limine. Such matters are irrelevant to the issues to be tried and would be unduly prejudicial to the Skokans if raised at trial. Bowe v. Pub. Storage, No. 1:14-cv-21559-UU, 2015 U.S. Dist. LEXIS 178180, at *15-16 (S.D. Fla. June 2, 2015) (exclude evidence to personal relationship between plaintiff and its counsel.) During the 7.1 Conference, the parties came to an agreement that the Court shall enter an order in limine with regards to Topic Nos. 12 and 14. Therefore, Plaintiffs' respectfully requests that this Court should enter into an order in limine with regards to Topic Nos. 12 and 14 and to sustain the Skokans' Motion in Limine as to Topic No. 13.

### 9. Topic No. 15 – Any Testimony Concerning the Relative Wealth of the Plaintiffs.

The courts have long held that testimony concerning the relative wealth of a party is irrelevant and prejudicial. Brough v. Imperial Sterling, Ltd., 297 F.3d 1172, 1178 (11th Cir. 2002). Any testimony concerning the Skokans' wealth, other than for the limited purposes of determining applicable damages pursuant to DOSHA, would be unfairly prejudicial. Accordingly, the Court should sustain Plaintiffs' Motion in Limine as to this topic.

### B. Hearsay

The Skokans request that Defendant be prevented from making any statement about the probable testimony of a witness who is absent, unavailable, or not called to testify at the trial as set forth in Topic No. 15. Such statements would be hearsay and are inappropriate under Fed. Rul. Evd. 801. Accordingly, the Court should sustain Plaintiffs' Motion in Limine as to this topic.

### C.  Untimely Disclosures

With regards to Topic Nos. 16-18, the Skokans' request that Defendant be prevented from introducing evidence or commentary regarding evidence and individuals that were not timely disclosed or produced to Plaintiffs during discovery pursuant to Fed. R. Civ. Pro. 37(c)(1). Such would constitute an unfair surprise, and would be highly prejudicial to Plaintiffs. Disa v. Ashley Furniture Indus., No. 8:14-cv-01915-T-27AEP, 2017 U.S. Dist. LEXIS 49985, at *5 (M.D. Fla. Jan. 6, 2017) (motion in limine granted to exclude evidence during trial that was not properly produced during discovery); Beron v. Alvarez, No. 8:10-cv-1014-T-33TBM, 2011 U.S. Dist. LEXIS 128734, at *2 (M.D. Fla. Nov. 7, 2011) (motion in limine granted to exclude items of evidence from trial that were not properly produced.)

In particular, Plaintiffs' request that Defendant not be allowed to introduce testimony or evidence regarding Gemma Luxford, Hannah Mytton Yates, Berchel Salvator, Nicolae Stefanut, Gary Davies, Marie Campbell, Monica Noble, Sam Montalvo, Teo Strazicic, Meaghan Gies, Mike Fettes, Owen Torres, Erica Popkin-Green, Joseph Duenas, Nancy Hertlin, Michael Carey, Dwight Morris, and Anna Dellarciprete, who were disclosed three days before the end of discovery.

Plaintiffs' also request that Defendant not be allowed to introduce testimony or evidence regarding Elizabeth Peters, who was disclosed to Plaintiffs on October 1, 2018, twenty-one (21) days after the close of discovery. The timing of these disclosures provided Plaintiffs with wholly insufficient time in which to subpoena said individuals in compliance with Local Rule 24.1(h).

Wherefore, such testimony or evidence would constitute an unfair surprise and would be highly prejudicial to Plaintiffs, and therefore should be excluded and an Order in limine granted.

### D.  Affirmative Defense Exclusion/Default Judgment.

As the Court is aware, the Skokan family has presented three causes of action against Royal Caribbean.  The first cause of action involves the intentional infliction of emotional distress.  The basis of this claim is that Royal Caribbean had statements from three (3) separate eyewitnesses (within feet) who observed Nathan, who was involved in tragic horseplay, climb up onto the rail, lose his balance and fall.

Nathan took this tragic action after one of the three witnesses to his fall made a statement to the like:  "if you can't have a good time the last night on a cruise ship, there's the jump zone,"

and pointed to the rail. The three witnesses then described Nathan running to the rail, straddling the rail, and then losing his balance, presumably, as a result of his high level of intoxication. (Marsh Depo., 54:7-17, 55:8-13; and Anna Wright Depo., 69:16-70:17, 111:7-19) Notwithstanding direct actual knowledge from three eyewitnesses about this tragic accident, Royal Caribbean announced to the thousands of passengers on the vessel that Nathan had "intentionally" taken his own life. (Campos Depo., 115:1-4, and 244:17-25)

Royal Caribbean's actions were strictly pecuniary. No mother, father, parent or any other person for that matter, would conceive that you could go on a Royal Caribbean vessel, for purposes of a vacation, and "accidentally" lose your life. Moreover, when a person "intentionally" takes their own life, then it certainly excuses Royal Caribbean's behavior of not following its own procedures and methodologies by allowing a guest to become so inebriated that they are unable to exercise reasonable care for their own safety.

Royal Caribbean had one goal. Steam back to Fort Lauderdale and load up another 4,200 passengers and 1,600 crew for its "Christmas Cruise." A search, rescue and due diligence is certainly analyzed and considered by passengers in a different light when it involves a suicide.

On December 28, 2016, just days after Nathan's death, an evidence hold letter was forwarded to the Legal Department at Royal Caribbean Cruises. (Campos Depo., 25:5-11, Depo. Ex. 3). In addition to a request to preserve all videos, voyage data recorder, e-mails, communications, it also requested all witness statements or interviews. During the 30(b)(6) deposition of Royal Caribbean, it was conceded by their corporate representative that Royal Caribbean had no knowledge as to whether Royal Caribbean did anything to comply with the evidence hold letter, and that Royal Caribbean did not preserve the requested information regarding Nathan's tragic death. (Campos Depo., 26:11-25, 34:25-35:5, and 36:22-37:16)

Indeed, Amanda Campos, Royal Caribbean's corporate representative, flatly admitted that all of the information normally retained on the voyage data recorder such as navigation and bridge communications had been erased and not preserved. Id. at 36:22-37:16.

In Filing No. 61, in an Order entered by U.S. Magistrate on August 23, 2018, Royal Caribbean was commanded to produce, by September 4, 2018, all internal communications about the Skokan family. In addition, pursuant to the Magistrate's Order in Filing No. 61, Royal Caribbean was also commanded to produce all documentation involving the "alleged overserving of alcohol to Nathaniel Skokan."

The only documents served in response to Filing No. 61 by Royal Caribbean involved internal communications in a software known as "Salesforce." (Campos Depo. 226:1-10)  In fact the Royal Caribbean corporate representative testified that there were no other emails besides the Salesforce e-mails. Id. at 8-24.  No external e-mails exchanged with Royal Caribbean and other passengers, or outside parties, were produced prior to the close of discovery on September 10, 2018.

On September 26, 2018, another hearing was held before United States Magistrate Jonathan Goodman who ultimately entered Filing No. 83 once again ordering "all e-mails" that relate to the following topics:  (1) the alleged overserving of alcohol to Nathaniel Skokan.  Filing No. 83 at p. 1.  Judge Goodman further ordered those documents produced by October 1, 2018.

On October 1, 2018, just after 10:00 p.m. EST, Royal Caribbean produced additional e-mails which included communications between an eyewitness, to-wit:  Elizabeth Peters, who reported that she had spent over an hour talking with Nathan on the evening just prior to his death. (Def. Supplemental Response to Plaintiffs' April 16, 2018 First Requests for Production of Documents to Defendant sent October 1, 2018).  Royal Caribbean also produced an e-mail from one Kevin D. Braswell of Maumee, Ohio, which contained the following information:

> I first ran into Nathaniel at the Champagne bar around 6pm the night of the 21st He was attending a martini class. My wife and I commented on the fact that he was intoxicated and very loud. Around 11 p.m. while watching the late-night comedy show Mr. Skokan and another gentleman approached the bar in [the] theater and order[ed] a drink and was very loud to the point several of the guest[s] turned around to quite [sic] him. Shortly after he stood directly behind me and started getting loud again. I turned around and the gentlemen he was with stated he would take Mr. Skokan out of the theater. Shortly after the young man return[ed] and apologized for Nathaniel's behavior and indicating he was intoxicated. […] My encounter with both guest[s] had one thing[:] alcohol. Any my opinion both incident[s] could have been avoided had someone stepped in a[nd] stopped either gentlemen for drinking to the point of intoxication. […] Had it not been for the alcohol it is my opinion Mr. Skokan most likely would still be with us.

(See Braswell Letter, attached hereto.) The Braswell e-mail, as well as the Peters e-mail, were only produced by Royal Caribbean *after* the close of discovery, goes to the very heart of the Skokan family's lawsuit.  Here, a routine passenger, Mr. Braswell, one of thousands on the Royal Caribbean vessel, made actual, direct observations about Nathan's extreme level of intoxication that lasted throughout December 21, 2016 and on more than one occasion.  Braswell notes that

Royal Caribbean's staff could have easily intervened, followed its own internal procedures on serving alcohol to a passenger and Nathan "would still be with us." Id.

Not only did Royal Caribbean fail to produce this e-mail until it received two separate Orders from the United States Magistrate and *after* discovery closed, Royal Caribbean announced to the media and the thousands of passengers on its vessel that it was sad to report that a passenger had intentionally taken his own life. Royal Caribbean neglected to announce to its passengers that this 22-year-old young man was visibly and dangerously intoxicated as confirmed by e-mails from two (2) routine passengers and that they neglected to intervene and usher him safely to his cabin for a good night's sleep.

Although the Skokan family will file a Motion for an appropriate sanction, pursuant to FRCP 37, requesting relief, the Skokans hereby preserve the record by also filing this Motion in Limine.

Royal Caribbean failed and neglected to produce e-mails requested for months and months in discovery by the Skokans and held onto such critical evidence and information until after the close of discovery.

Wherefore, the Skokans pray for an Order *in limine* that Royal Caribbean not be allowed to present any evidence on its affirmative defenses set forth in the following paragraphs, to-wit: 9, 10, and 16. In the alternative, the Skokans pray that this Court enter an Order that the facts set forth by eyewitness Braswell be taken as "established" for factual purposes of this action and prohibiting Royal Caribbean from supporting or opposing such claims or attempting to introduce exculpatory evidence.

### E. Adverse Inference.

As provided above, on December 28, 2016, six days after the incident, Plaintiffs' counsel provided Defendant with an Evidence Hold Letter, requesting that defendant "preserve and retain all documents, including any electronic information, that is or may be relevant to the event and all actives prior to and leading up to the Event." This letter also included a list of items that would be considered relevant. The Royal Caribbean corporate representative testified that Royal Caribbean had no knowledge as to whether it did anything to comply with the evidence hold letter, and that Royal Caribbean did not preserve the requested information regarding Nathan's tragic death. (Campos Depo., 26:11-25, 34:25-35:5, and 36:22-37:16) Through the discovery process, Defendant has disclosed to Plaintiffs that the black box recorder has been destroyed, and

that correspondences have been deleted and destroyed. (Campos Depo. 36:22-37:16; Def. Supplemental Response to Plaintiffs' April 16, 2018 First Requests for Production of Documents to Defendant sent October 1, 2018). As such, Plaintiffs should be entitled to an inference of pretext that the documents destroyed do not support any reason proffered by Defendant, and that an adverse inference may be assumed by the jury. Morgan v. Houston's Rests., Inc., CASE NO. 99-6970-CIV-DIMITROULEAS, 2000 U.S. Dist. LEXIS 19242, at *26 (S.D. Fla. Oct. 23, 2000) (inference of pretex that the documents destroyed to not support the reasons proffered by Defendant was granted.)

### III. CONCLUSION

During the Local Rule 7.1(a)(3) conference, the Plaintiffs' and Defendant's counsel agreed that the Court shall enter an order in limine to prevent the presentation of evidence and the making of arguments related to Topic Nos. 12, 14, and 21.

For all the foregoing reasons, the Plaintiffs respectfully request the Court enter an Order in limine preventing Defendant from presenting evidence or making argument related to the foregoing matters.

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)(3)

Pursuant to Local Rule 7.1(a)(3), the undersigned counsel certifies that he has contacted Defendant's counsel, and except as set forth above, Plaintiffs and Defendant are unable to agree.

DATED this 5th day of October, 2018.

TODD SKOKAN, Individually and as Special Administrator of the ESTATE OF NATHANIEL P. SKOKAN, Deceased, LISA SKOKAN, Plaintiffs

By: */s/ Paul M. Hoffman*
Paul M. Hoffman, Florida Bar No. 0279897
HOFFMAN LAW FIRM
2881 E. Oakland Park Blvd., Suite 307
Fort Lauderdale, FL 33036
Telephone: (954) 707-5040
Facsimile: (828) 743-0403
pmh@paulmhoffmanlaw.com

-and

By: */s/ Michael F. Coyle*
Michael F. Coyle, *Pro Hac Vice*
Jordan W. Adam, *Pro Hac Vice*
Ryan M. Ricke, *Pro Hac Vice*
FRASER STRYKER PC LLO
500 Energy Plaza
409 South 17th Street
Omaha, NE 68102
Telephone: (402) 341-6000
Facsimile: (402) 341-8290
mcoyle@fraserstryker.com
jadam@fraserstryker.com
rricke@fraserstryker.com
ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

The undersigned certifies that the above and foregoing was filed electronically on this 5th day of October, 2018, with the United States District Court for the Southern District of Florida using the CM/ECF system, which sent notification of such filing to the following individuals:

Curtis J. Mase
Victor J. Pelaez
Adam Finkel
Mase Mebane & Briggs, P.A.
2601 S. Bayshore Drive, Suite 800
Miami, FL 33133

Natasha K. Alcivar
Royal Caribbean Cruises Ltd.
1050 Caribbean Way
Miami, FL 33132

/s/ Michael F. Coyle

1958450 v5