**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 17-24337-CIV-ALTONAGA/Goodman**

**TODD SKOKAN** and
**LISA SKOKAN**,

Plaintiffs,
v.

**ROYAL CARIBBEAN CRUISES, LTD.**,

Defendant.
______________________________________/

**ORDER**

**THIS CAUSE** came before the Court on Defendant, Royal Caribbean Cruises, Ltd.'s Motion for Summary Judgment [ECF No. 73], filed September 17, 2018. On October 2, 2018, Plaintiffs, Todd Skokan and Lisa Skokan, filed a Memorandum of Law Opposing Defendant's Motion for Summary Judgment [ECF No. 84] (the "Response"), to which Defendant filed a Reply [ECF No. 88] on October 5, 2018. The Court has carefully considered the parties' submissions, their exhibits, the record, and applicable law. For the reasons that follow, the Motion is denied.

## I. BACKGROUND

This is a maritime wrongful death action. On December 17, 2016, Nathan Skokan joined his parents, the Plaintiffs Todd and Lisa Skokan, and his two brothers, Zachary and Samuel Skokan, for a five-day cruise onboard the *Independence of the Seas*, a vessel owned and operated by Defendant. (*See* Defendant's Statement of Material Facts (the "Def.'s SOF") ¶ 1; Pls.' Resp. to Def.'s SOF ¶ 1). On the last night of the cruise, Nathan, while intoxicated, made his way to the ship's exterior 12th floor deck with multiple passengers he had met on the cruise. (*See* SOF

¶¶ 7, 10–12; Pls.' Resp. to Def.'s SOF ¶¶ 7, 10–12). One of those passengers jokingly suggested they should jump overboard, pointing to the hand rail. (*See* SOF ¶ 15; *see also* Pls.' Resp. to Def.'s SOF ¶ 15). In turn, Nathan pretended to throw himself up on the handrail, but when he went to sit on the hand rail, he fell off the side. (*See id.*). According to Plaintiffs, Nathan accidentally fell off the vessel after losing his balance on the hand rail. (*See* Pls.' Resp. to Def.'s SOF ¶¶ 15, 19–21). One of the passengers testified that Nathan, seemingly intoxicated, lost his balance, slipped, and accidentally flipped over the ship's railing. (*See id.* ¶ 21).

Based on the events that transpired before and after Nathan's fall and death, Plaintiffs filed an Amended Complaint [ECF No. 29] (the "FAC") against Defendant on March 3, 2018. The Amended Complaint states three claims for relief: (1) wrongful death under the Death of the High Seas Act (Count I) (*see id.* ¶¶ 28–35); (2) intentional infliction of emotional distress (Count II) (*see id.* ¶¶ 36–42); and (3) false imprisonment (Count III) (*see id.* ¶¶ 43–48). Defendant seeks summary judgment on all counts. (*See generally* Mot.).

## II. LEGAL STANDARDS

### A. Summary Judgment Standard

Summary judgment is rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a), (c). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

At summary judgment, the moving party has the burden of proving the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the non-moving

party. *See Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Courts must consider the entire record and not just the evidence singled out by the parties. *See Clinkscales v. Chevron U.S.A., Inc.*, 831 F.2d 1565, 1570 (11th Cir. 1987). The non-moving party's presentation of a "mere existence of a scintilla of evidence" in support of its position is insufficient to overcome summary judgment. *Anderson*, 477 U.S. at 252.

If there are any factual issues, summary judgment must be denied and the case proceeds to trial. *See Whelan v. Royal Caribbean Cruises Ltd.*, No. 1:12-CV-22481, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (citing *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981)). Even when the parties "agree on the basic facts, but disagree about the inferences that should be drawn from these facts[,]" summary judgment "may be inappropriate." *Id.* (alteration added; citation omitted). "If reasonable minds might differ on the inferences arising from undisputed facts, then . . . [c]ourt[s] should deny summary judgment." *Id.* (alterations added; citations omitted). Additionally, courts cannot weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Commc'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

**B. General Maritime Law**

"General maritime law governs tort actions between a cruise line and its passengers." *Taiariol v. MSC Crociere, S.A.*, No. 0:15-CV-61131, 2016 WL 1428942, at *3 (S.D. Fla. Apr. 12, 2016) (citing *Keefe v. Bah. Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989)). Federal maritime law applies when: (1) the alleged tort occurred on navigable waters; (2) the incident has the potential to disrupt maritime commerce; and (3) the general activity giving rise to the incident has a substantial relationship to traditional maritime activity. *See Frasca v. NCL (Bah.)*,

*Ltd.*, 654 F. App'x 949, 951 (11th Cir. 2016) (citing *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 900 (11th Cir. 2004)).

## III. ANALYSIS

### A. Count I — Negligence

Plaintiffs' negligence claim is based on two categories of Defendant's conduct: (1) serving Nathan substantial amounts of alcohol in the hours before his death; and (2) inadequately attempting to rescue Nathan once he fell overboard. (*See* FAC ¶¶ 28–35). Defendant asserts it is entitled to summary judgment on both theories of negligence (*see* Mot. 15), each of which the Court addresses in turn.

#### *i. Negligence in Serving Alcohol*

First, Defendant moves for summary judgment on Plaintiffs' negligence claim predicated on Defendant's serving Nathan substantial amounts of alcohol in the hours before his death. (*See id.* 16–18). "[A] cause of action for over service of alcohol sounds in negligence." *Doe v. NCL (Bah.) Ltd.*, No. 11-22230-Civ, 2012 WL 5512347, at *6 (S.D. Fla. Nov. 14, 2012) (citation omitted). "Under maritime law, the owner of a ship in navigable waters owes passengers a 'duty of reasonable care' under the circumstances." *Sorrels v. NCL (Bah.) Ltd.*, 796 F.3d 1275, 1279 (11th Cir. 2015) (citations omitted). To prevail in a maritime negligence claim, a plaintiff must show: "(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (citations omitted).

In its Motion, Defendant solely addresses the element of proximate causation, insisting Nathan's "intentional[] and conscious[]" decision to jump over the railing was the sole proximate

cause of his death, and that his alcohol intake was not closely linked to his death. (Mot. 18 (alterations added)). The Court disagrees.

Plaintiffs supply the Court with ample evidence disputing Defendant's characterization of Nathan's death as intentional. (*See* Resp. 23–26). Plaintiffs point to multiple facts in the record showing (1) eyewitnesses observed Nathan intoxicated hours before his death, including Defendant's employee who observed Nathan intoxicated 20 minutes before Nathan fell overboard (*see* Plaintiffs' Statement of Facts (the "Pls.' SOF") ¶¶ 69–71); (2) eyewitnesses observed Nathan lost his balance and accidentally went overboard (*see* Def.'s SOF ¶ 15; Pls.' Resp. to Def.'s SOF ¶¶ 19–22), due to alcohol intoxication (*see* Pls.' SOF ¶¶ 72, 74); (3) in the 12 hours preceding Nathan's fall, Defendant served Nathan at least 30 ounces of alcohol, including six full-sized martinis at the martini making class earlier in the day and at least seven vodkas, two vodkas mixed with Red Bull, and one cognac (*see id.* ¶¶ 66, 68); and (4) expert testimony that at the time Nathan went overboard, his level of intoxication had "presented an extreme risk of harm," supported by Nathan's blood-alcohol content of at least .256 gm/dl, which can cause disorientation vertigo, muscular incoordination, and significantly impaired judgment (*id.* ¶ 73).

In light of the multiple eyewitness accounts, the expert report, and records showing Nathan was intoxicated leading to his *accidental* death, the Court rejects Defendant's assertion the Court must conclude as a matter of law that Nathan "simply chose to go over the railing." (Mot. 18). The record is replete with disputes of fact on the element of proximate causation. *See Doe v. NCL (Bah.) Ltd.*, No. 11-22230-Civ, 2012 WL 5512314, at *4 (S.D. Fla. Nov. 14, 2012) (denying summary judgment where plaintiff was overserved alcohol on vessel and was observed by crewmembers to be intoxicated because those facts presented "issues [of] material fact[] [that]

remain[ed] unresolved" and thus "judgment as a matter of law [wa]s not warranted on the issue of the alleged over service of alcohol by [d]efendant." (alterations added)). Defendant's motion for summary judgment as to Plaintiffs' first theory of negligence is therefore denied.

*ii. Negligence in Search and Rescue Efforts*

Defendant also moves for summary judgment on Plaintiffs' negligence claim predicated on Defendant's efforts to rescue Nathan once he fell overboard. (*See* Mot. 18–19). A shipowner is required to act with reasonable care under the circumstances to rescue persons that go overboard. *See Broberg v. Carnival Corp.*, 303 F. Supp. 3d 1313, 1317 (S.D. Fla. 2017). Specifically, a cruise line has a "duty to exercise reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances." *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1246 (11th Cir. 2014) (quoting *Barbetta v. S/S Bermuda Star*, 848 F.2d 1364, 1371 (5th Cir. 1988)). One way to determine what is reasonable under the circumstances is to present evidence of industry practice or guidelines, including evidence of a custom within a particular industry group or organization. *See Holderbaum v. Carnival Corp.*, 87 F. Supp. 3d 1345, 1353 (S.D. Fla. 2015) (citations omitted).

Defendant asserts its search and rescue efforts, albeit unsuccessful, were reasonable as a matter of law because its employees (1) immediately began searching for Nathan when informed Nathan had gone overboard; (2) searched for Nathan until the Coast Guard arrived and took over the search; and (3) used search lights, and not life boats — the only optimal rescue strategy given that using life boats in the pitch black waters would have been unrealistic. (*See* Mot. 19). Again, the Court disagrees.

Plaintiffs point to multiple facts in the record that support a finding that Defendant's search and rescue efforts were unreasonable. (*See* Resp. 26–27). Even though eyewitnesses

immediately notified cruise personnel that Nathan had fallen overboard from the 12th floor deck (*see* Def.'s SOF ¶ 24; Pls.' Resp. to Def.'s SOF ¶ 24), Defendant (1) did not lower the rescue boats until two hours after being notified (*see* Pls.' Resp. to Def.'s SOF ¶ 26; *see also* Pls.' SOF ¶ 93); (2) did not have its Rescue Team 2 ready for over an hour and a half after Rescue Team 1 was ready (*see* Pls.' SOF ¶ 99); and (3) placed its crew members approximately 100 feet above the water during the night, without additional use of search and rescue techniques (*see id.* ¶ 100). These facts, along with Plaintiffs' expert opinion on the reasonable standard of care exercised in the industry (*see id.* ¶¶ 98–99), all present a genuine question of fact for a jury to decide — whether Defendant was negligent in its search and rescue efforts. *See Varner v. Celebration Cruise Operator, Inc.*, No. 0:15-CIV-60867-WPD, 2016 WL 7508258, at *6 (S.D. Fla. Sept. 30, 2016) (denying summary judgment where plaintiffs "put forth record evidence to support their allegations of [n]egligent [r]escue [e]fforts" including "the time it took for the crew to respond once they were made aware that [the decedent] had gone overboard" reasoning those facts "are material because they could affect the outcome of the case." (alterations added; citation to record omitted)). The Court thus denies summary judgment on Count I.

**B. Count II — Intentional Infliction of Emotional Distress**

Defendant also moves for summary judgment on Plaintiffs' claim of intentional infliction of emotional distress. (*See* Mot. 10–13). Plaintiffs' intentional infliction of emotional distress claim is based on Defendant's announcement that Nathan "intentionally" fell overboard, which caused Plaintiffs immense grief that their son may have committed suicide — which according to Plaintiffs, Defendant and its employees knew at the time to be patently false. (FAC ¶¶ 36–42).

The Court applies Florida law to determine whether the allegations concerning Plaintiffs' intentional infliction of emotional distress claim are sufficient. *See Garcia v. Carnival Corp.*,

838 F. Supp. 2d 1334, 1339 (S.D. Fla. 2012) (applying Florida law to the intentional infliction of emotional distress claim of a cruise ship passenger). "To prove intentional infliction of emotional distress under Florida law, the plaintiff must prove: (1) deliberate or reckless infliction of mental suffering; (2) by outrageous conduct; (3) which conduct must have caused the suffering; and (4) the suffering must have been severe." *Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir. 1990) (citations omitted).

Defendant asks the Court to find as a matter of law that its announcements that Nathan "intentionally" went overboard were not outrageous. (Mot. 10). Specifically, Defendant contends there is no evidence to support Plaintiffs' claim where Nathan intentionally ran and leaned over the railing and where Defendant had to inform guests why the vessel was late into port. (*See id.* 13). Defendant insists this is not a case with a defendant deciding to "play a cruel joke" on the Plaintiffs without cause. (*Id.*).

Even though Defendant insists its facts are "undisputed" (*id.*), Plaintiffs point to evidence which they claim presents triable issues of fact for a jury to decide. (*See* Resp. 13–19). Most notably, about seven hours after Nathan fell overboard and seven hours after being informed by multiple eyewitnesses that Nathan's fall was an accident, Defendant made three public announcements, for thousands of passengers including Plaintiffs to hear, that a person on board "was witnessed intentionally going overboard from deck 12." (Def.'s SOF ¶ 52; Pls.' SOF ¶ 82; *see also* Independence of the Seas December 22, 2016 Public Announcement [ECF No. 73-9]). Defendant also issued a statement to the press stating Nathan had intentionally gone overboard. (*See* Def.'s SOF ¶ 55; Pls.' Resp. to Def.'s SOF ¶ 55; *see also* Third Amended Responses to Plaintiffs' Requests for Production of Documents [ECF No. 73-10] 1–2).

Although a close call, the Court again agrees with Plaintiffs. As Plaintiffs note (*see* Resp. 14–15), this is not an ordinary situation, but one where the allegations "involve improper statements regarding the cause of a loved one's death . . . ." *Markham v. Carnival Corp.*, No. 12-23270-CV, 2012 WL 12866787, at *3 (S.D. Fla. Dec. 3, 2012) (alteration added). "[I]n this unique area, behavior which in other circumstances might be merely insulting, frivolous, or careless becomes indecent, outrageous and intolerable." *Id.* (internal quotation marks and citation omitted).

Defendant correctly points out that the undersigned's *Markham* decision was on a motion to dismiss, and not a motion for summary judgment. (*See* Reply 2). Defendant is mistaken, however, in asserting the Court must therefore find, as a matter of law, that (1) this is "not a situation where [Defendant] outright lied about [d]ecedent's death to either hide its own misconduct," and that (2) [i]ntentionally going overboard was probably the most sanitary way to describe this incident for the passengers onboard," because Defendant "never used the words "suicide" or that Nathan "killed himself." (Reply 4–5 (alterations added)). Those are factual assertions for the jury, not the Court, to assess.

Indeed, Plaintiffs' claim that by repeatedly announcing Nathan "intentionally" went overboard, Defendant falsified the true cause of Nathan's death and publicly disclosed Nathan had committed suicide is supported by evidence showing Defendant was informed by eyewitnesses that Nathan's death was an accident. (*See* Pls.' SOF ¶¶ 76–80). Plaintiffs construe these facts as a cover up (*see* Resp. 16) and provide evidence showing Plaintiffs were emotionally distressed as they understood the announcement to mean Nathan had committed suicide. (*See id.* ¶¶ 86–88; *see also* Pls.' Resp. to Def.'s SOF ¶ 56). To even attempt to resolve this dispute of fact would intrude on the province of the jury. *See Anderson*, 477 U.S. at 255

("Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." (alteration added)). This, the Court will not do. Accordingly, summary judgment on Count II is denied.

**C. Count III — False Imprisonment**

Finally, Defendant moves for summary judgment on Plaintiffs' false imprisonment claim. (*See* Mot. 13–15). Plaintiffs allege that during Defendant's search and rescue efforts, Defendant confined them in a cabin against their will. (*See* FAC ¶¶ 43–48).

To establish false imprisonment, a plaintiff must prove: "(a) an act intending to confine another within fixed boundaries; (b) the act directly or indirectly results in such a confinement; and (c) the confined person is conscious of or harmed by the confinement." *Barnes v. Carnival Corp.*, No. 06-20784-CIV, 2006 WL 8433555, at *4 (S.D. Fla. Dec. 22, 2006) (citation omitted). False imprisonment is "the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and the deprivation of his liberty." *Johnson v. Barnes & Noble Booksellers, Inc.*, 437 F.3d 1112, 1116 (11th Cir. 2006) (internal quotation marks and citation omitted). The plaintiff must "establish imprisonment contrary to his will and the unlawfulness of the detention." *Id.* (internal quotation marks and citation omitted; other citations omitted)).

Defendant contends the Skokans were never confined to their cabin and even if they were, Defendant had the contractual authority to confine them based on the passenger ticket contract. (*See* Mot. 13). Defendant asserts it is "undisputed" Defendant never told Plaintiffs they had to remain in their cabin, that none of the Skokans asked to leave, and that Defendant provided them a crewmember outside their door for assistance. (*Id.* 14). According to

Defendant, Plaintiffs are misconstruing "hospitality for confinement" and the Court should find as such as a matter of law. (*Id.*). The Court disagrees.

There remain genuine disputes of material fact as to whether Plaintiffs were confined against their will. (*See* Resp. 20–22). Defendant's head of security directed a security guard to escort Plaintiffs to their cabin and told Plaintiffs to "stay there" even though Plaintiffs refused the security escort. (Pls.' Resp. to Def.'s SOF ¶¶ 31–32). Once Defendants confined the Skokan family, a "big," "tall," and "intimidating" guard was posted immediately outside the cabin's door. (*Id.* ¶ 38). Lisa, Todd, and Sam Skokan all testified the guard did not allow them to leave the cabin. (*See id.* ¶ 37).

For example, when Lisa Skokan tried to leave the cabin, the security guard approached her, put both of his hands out, stepped toward her, and prevented her from leaving the cabin. (*See id.* ¶ 39). Plaintiffs remained in the cabin with the security guard outside the door until all of the other passengers disembarked the ship. (*See id.* ¶ 60). Given the record evidence, only some of which the Court outlines above, Plaintiffs' false imprisonment claim clearly presents triable issues of fact for a jury to decide. *See Spears v. Albertson's, Inc.*, 848 So. 2d 1176, 1178 (Fla. 1st DCA 2003) (where plaintiff testified she asked to leave but defendant prevented her from doing so by blocking the door, "disputed issues of material fact remain[ed] as to whether [plaintiff] was, in fact, held against her will, thus precluding summary judgment." (alterations added)).

Defendant's alternative argument the confinement was permissible based on the terms of Plaintiffs' contract with Defendant (*see* Mot. 15) is unavailing. As Plaintiffs note (*see* Resp. 22–23), the contract only authorized Defendant to confine passengers when a passenger is "believed to present a possible danger, security risk or be detrimental to himself or the health, welfare,

comfort or enjoyment of others, or is in violation of any provision of this Agreement." (Def.'s SOF ¶ 3; Pls.' Resp. to Def.'s SOF ¶ 3; *see also* Independence of the Seas Guest Ticket Booklet [ECF No. 73-2] 16–17). While Defendant insists the ticket contract gave it the authority to confine Plaintiffs based on Defendant's "sole opinion" (Reply 8 (quoting Guest Ticket Booklet 16)), Defendant does not state how even in its opinion any such circumstance or threat existed. (*See generally* Mot; Reply). The passenger ticket contract thus did not vest Defendant with authority to confine Plaintiffs against their will. Summary judgment as to Count III is denied.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment [**ECF No. 73**] is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 16th day of October, 2018.

Cecilia M. Altonaga

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record